TAMARA W. ASHFORD
Acting Assistant Attorney General

G. PATRICK JENNINGS
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C.  20044-0683
Telephone:   (202) 307-6648
E-mail:      *Guy.P.Jennings@usdoj.gov*

Attorneys for the United States of America

BENJAMIN B. WAGNER
United States Attorney

Of Counsel

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Civil No.  2:12-CV-02334 TLN AC |
| ) | |
| v. ) | |
| ) | **MEMORANDUM IN SUPPORT OF** |
| L. RICHARD SHEARER; ) | **UNITED STATES' MOTION FOR** |
| DIANE SHEARER; ) | **PARTIAL SUMMARY JUDGMENT** |
| STANLEY SWENSON as Trustee of the ) | |
| HOTLUM TRUST, BERRYVALE TRUST, and ) | |
| REGENCY TRUST; ) | Date:    September 25, 2014 |
| CARL S. WILSON; CAROL WILSON; ) | Time:    2:00 p.m. |
| EVELYN LOUISE SHEARER, as Trustee of ) | Court:   2, Fifteenth Floor |
| the EVELYN LOUISE REVOCABLE TRUST; ) | Judge:   Hon. Troy L. Nunley |
| VERNON L. SWENSON; LEORA SWENSON; ) | |
| ) | |
| Defendants. ) | |
| ) | |

## Introduction

This is a civil action brought by the United States of America (a) to reduce to judgment federal tax assessments against L. Richard Shearer and Diane Shearer ("taxpayers"), husband and wife; (b) to adjudicate that Hotlum Trust, Berryvale Trust, and Regency Trust are the nominees, alter egos, or fraudulent transferees of the taxpayers; and (c) to foreclose federal tax liens against certain real property in Siskiyou County, California.  In this motion, the United

1  States seeks only an adjudication of the tax and fraud penalty liabilities, leaving for trial the

2  nominee, fraudulent transfer, and foreclosure issues.[1]

3       The facts set forth in the United States' Statement of Undisputed Facts is incorporated

4  by this reference and a brief summary follows.  L. Richard Shearer ("Dr. Shearer") during the

5  tax years at issue (1995-2001) practiced as a medical doctor in Siskiyou County, California.  In

6  an attempt to reduce his federal income tax, he employed a trust scheme promoted by Lonnie

7  Crockett.  Other doctors in Siskiyou County were drawn into the scheme, beginning in 1995.

8  The scheme was intended to interfere with the ability of the Internal Revenue Service (the

9  "IRS") to determine and to collect the Shearers' tax.

10       Dr. Shearer deposited substantial net income from his medical practice into a bank

11  account he controlled that was in the name of a trust he controlled. In furtherance of the

12  conspiracy to conceal such income from the Internal Revenue Service, Dr. Shearer and other

13  co-conspirators then cycled the income through bank accounts in Utah controlled by Crockett

14  and through foreign bank accounts, and then back to bank accounts in the Eastern District of

15  California which were controlled by Dr. Shearer.  The cycling of funds by Dr. Shearer was

16  accomplished through a series of sham transactions which had no economic purpose other

17  than the evasion of income taxes.  Crockett was paid a fee for each such "loop" of funds.  Facts

18  ¶ 4-5.

19       In connection with the transfer of funds from Dr. Shearer's domestic trust bank account

20  to a bank account in Utah controlled by Crockett in the name of Atlantic Telesis, Dr. Shearer

21  received phony invoices, sent in the name of Atlantic Telesis at the direction of Crockett, in

22  amounts corresponding to the funds sent by Shearer to Crockett for routing through the

23  offshore system of bank accounts.  The invoices purported to be for services rendered by

24  Atlantic Telesis to Dr. Shearer's medical practice, but in fact, no such services were rendered

25

26       [1] The United States asserts that the Shearers continue to evade collection by holding their residence and business properties in the names of the Crockett-related trusts.  This issue is reserved for trial.

27

*US MSJ - Memo*

by Atlantic Telesis.  Facts ¶ 6.

The object of the cycling of funds through the various bank accounts was to conceal the income from the Internal Revenue Service.  Dr. Shearer had his medical practice pay him wages, which he reported to the IRS as income in tax returns for each of trust scheme years. Such wages consisted of a small portion of the actual net income of his medical practice. In each of those years, a much larger portion of his net income from his practice was concealed from the IRS through the system of accounts described above, and was not reported as income on the Shearers' tax returns.  Facts ¶ 7.

In furtherance of the conspiracy to defraud the United States, on or about October 28, 1998, Dr. Shearer caused a check for $225, payable to Farr West, (a Crockett company) to be written on the bank account of Strawberry Valley Family Trust, a trust controlled by Dr. Shearer. Facts ¶ 9.

As an example of Dr. Shearer's false tax returns, for the 1998 tax year the return contained materially false information, that is, it reported taxable income of only $17,000, and did not report in excess of $100,000 in income to Dr. Shearer that had been earned through Shearer's medical practice in the year 1998.  Dr. Shearer knew that the return materially understated his actual income, and acted willfully in subscribing to the false return.  Facts ¶ 10.

Dr. Shearer admitted to the foregoing facts by pleading guilty to a conspiracy to defraud the United States in violation of 18 U.S.C. § 371, and three counts of making and subscribing to false tax returns in violation of 26 U.S.C. § 7206(1).  The facts above are set forth in an attachment to the plea agreement, Ex. B to the Jennings declaration, and admissions of Dr. Shearer.  Facts ¶ 3.

After his criminal conviction Dr. Shearer filed amended tax returns which were (with slight changes) accepted as filed by the United States.  Facts ¶ 11.  The United States contends that the tax liabilities at issue in this motion were admitted by the Shearers in the amended returns.  The amended returns disregarded the transfer of income to the Crockett-

related trusts.  Facts ¶ 12.  Revenue Agent Nancy Yang examined the amended returns and substantially reduced the tax and fraud penalties which had been assessed for 1995 - 1999. Facts ¶ 13.  Revenue Agent Yang has carefully reviewed the IRS account records and determined that the current balances reflect the proper abatement of tax, penalties, and interest.  Declaration of Revenue Agent Nancy Yang. There is no legitimate dispute about the amount of the tax.

The criminal case required a lengthy investigation and prosecution.  During this time, the IRS permitted the typical three-year statute of limitations to expire.  For most of the years at issue, the United States must show that the fraud penalty is merited, and so the tax may be assessed at any time.  26 U.S.C. § 6501(c)(1) and (2).  The facts admitted by Dr. Shearer in his plea agreement and the facts adduced in discovery show that Dr. Shearer willfully attempted to conceal the unreported income from the IRS.

**Issues**

1.    Whether the Shearers owe the unpaid individual income tax liabilities reported on their amended tax returns.

2.    Whether the Shearers engaged in intentional wrongdoing with the specific intent to avoid a tax known to be owing.

**Law and Argument**

**A.  Summary Judgment Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.  The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that it believes demonstrate the absence of genuine issues for trial.  *Celotex*, 477 U.S. at 323;  *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).

- 4 -

1

2      Once the movant's burden is met by producing evidence which, if uncontroverted, would

3    entitle the movant to judgment as a matter of law, the burden then shifts to the nonmoving party

4    to set forth specific facts demonstrating that there is a genuine issue for trial.  *Anderson v.*

5    *Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986).  In this regard, Rule 56(e) of the Federal

6    Rules of Civil Procedure provides that the nonmoving party "may not rest upon the mere

7    allegations or denials" of his or her pleadings.  *Id*.  This burden placed on the nonmoving party

8    is not negligible; indeed, "[i]f the evidence [proffered by the nonmoving party] is merely

9     colorable or is not significantly probative, summary judgment may be granted."  *Id*.  Conclusory

10   allegations  unsupported by specific factual data are insufficient to create a triable issue of fact

11   so as to preclude summary judgment.  *See L & M Enters., Inc. v. BEI Sensors & Sys. Co.*, 231

12   F.3d 1284, 1287 (10th Cir. 2000); *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

13      "In an action to collect tax, the government bears the initial burden of proof. The United

14   States, however, may satisfy this initial burden by introducing into evidence its assessment of

15   taxes due. Normally, introduction of the assessment establishes a prima facie case." *Oliver v.*

16   *United States*, 921 F.2d 916, 919 (9th Cir. 1990) (internal citations omitted). The United States

17   has submitted Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters

18   ("Forms 4340"), for the defendants for each of the tax periods at issue. (Ex. XXX ).  These

19   Certificates are probative evidence.[2] They establish that the tax liabilities were properly

20   assessed against the defendants by a duly authorized delegate of the Secretary of Treasury, 26

21   U.S.C. §§ 6201- 6203, and that the notices and demand for payment of the liabilities were

22   properly sent. 26 U.S.C. §§ 6303(a) & 6321. *See, e.g., Hansen v. United States*, 7 F.3d 137,

23   138 (9th Cir. 1993) (*per curiam*); *Hughes v. United States*, 953 F.2d 531, 535 (9th Cir. 1992);

24   *United States v. Chila*, 871 F.2d 1015, 1017-1019 (11th Cir. 1989).

25      These Forms 4340 show that the defendants are indebted to the United States for

26

27

       [2]Generated under seal and signed by an authorized delegate of the Secretary of the Treasury,
     Forms 4340 are self-authenticating under Federal Rule of Evidence 902(1) and admissible as a public
     record under Federal Rule of Evidence 803(8). *Hughes v. United States*, 953 F.2d 531, 540 (9th Cir. 1992);
     *Rossi v. United States*, 755 F. Supp. 314, 318 (D. Or. 1990).

*US MSJ - Memo*

unpaid assessed balances of tax, penalties, and interest in the amounts set forth thereon.[3]
These assessments for unpaid taxes carry a presumption of correctness "so long as they
are supported by a minimal factual foundation." *Palmer v. United States*, 116 F.3d 1309,
1312 (9th Cir. 1997). This presumption shifts the burden of proof to the taxpayer to show
that the amount of these assessments is incorrect. *Id.* In sum, once the United States
submits Forms 4340 and the minimal factual foundation that support them, defendants
must come forward with contrary evidence in admissible form sufficient to rebut the
presumption of correctness in favor of the information contained in the Forms 4340. If
they do not, the United States is entitled to judgment as a matter of law for the unpaid
assessed balances shown thereon, together with statutory interest and penalties accruing
to the date of payment.

**B.  The Tax Assessments Should be Reduced to Judgment**

1.  Facts admitted by the Shearers establish their federal tax liabilities.

In addition to the Certificates of Assessments that are submitted for the tax periods at
issue, attached to the Jennings' Declaration, which are alone sufficient to support a judgment
for these liabilities, the record shows that the Shearers have admitted to the amount of taxes
owed for all of the periods at issue by filing returns which were accepted as filed.  (Facts ¶ 11).
These admissions serve as a sufficient minimal factual foundation for the tax assessments
against the Shearers and conclusively establish these liabilities for the purposes of this suit.
Statements in a tax return are admissions under penalty of perjury.  *Waring v. Commissioner*,
412 F.2d 800, 801 (3d Cir.1969);  *Powell v. Commissioner*, 256 F.2d 941, 944 (5th Cir. 1958);
*Stafford v. Commissioner*, T.C. Memo. 1997-233 (citing cases), *aff'd,* 141 F.3d 1164 (5th Cir.
1998).

Income includes "compensation for services" such as fees paid for the practice of
medicine. 26 U.S.C. § 61(a)(1); *see, also*, *Mayo Foundation v. United States*, 562 U.S. ——,
131 S.Ct. 704 (2011) (medical residents are not exempted from FICA taxes on their earnings.)

---

[3] The Forms 4340 do not reflect accrued but unassessed statutory interest and penalties
that continue to accrue on the tax liabilities because those amounts change daily.

1   Dr. Shearer earned above the filing limit, and so was required by law to accurately report his

2   annual income, 26 U.S.C. § 6012(a), and to pay the tax shown due on the return.  26 U.S.C. §

3   6151.  Where the taxpayer reports a tax, the IRS is authorized to immediately assess it, 26

4   U.S.C. § 6201, without further deficiency procedures such as a Tax Court determination.

5   After December 31, 1982, interest on tax deficiencies has been determined by reference

6   to a floating interest rate and compounded daily.  See  26 U.S.C. §§ 6601(a); 6621; 6622(a)

7   and 28 U.S.C. § 1961(c); *Purer v. United States*, 872 F.2d 277 (9th Cir.1989).  Submitted

8   herewith is the Declaration of Revenue Agent Nancy Yang, Ex. J - P, with attached "INTSTD"

9   transcripts which detail the accrual of interest and the current balance for each of the periods at

10  issue.

11  Revenue Agent Yang has reviewed the adjustments to the initial assessments against

12  the Shearers and determined that the calculations were in accord with the amended returns

13  filed by the Shearers.  All credits for which is supported by evidence is shown on the IRS

14  transcripts.  The Shearers cannot dispute the tax liabilities.

15  **C.  Dr. Shearer's Actions Merited the Fraud Penalty**

16  The purpose of the fraud penalty is not punitive but to reimburse the United States for

17  the heavy expense of investigation and the loss resulting from the taxpayer's fraud.  *Helvering*

18  *v. Mitchell*, 303 U.S. 391, 401 (1938);  *Traficant v. Commissioner*, 884 F.2d 258, 264, (6th Cir.

19  1989).   The United States bears the burden of proving by clear and convincing evidence that

20  Dr. Shearer had an intent to evade taxes.  If the United States establishes that any portion of

21  the Shearers' unpaid tax is due to fraud, the entire underpayment is treated as due to fraud.  26

22  U.S.C.A. §6663(b), *Lollis v. Commissioner*, 595 F.2d 1189, 1192 (9th Cir. 1979).  The taxpayers

23  then have the burden of proof to show by a preponderance of the evidence that any portion of

24  the tax underpayment is not due to fraud. 26 U.S.C. § 6663(b).

25   "[F]raud is intentional wrongdoing on the part of the taxpayer with the specific intent to

26  avoid a tax known to be owing."  *Conforte v. Commissioner*, 692 F.2d 587, 592 (9th Cir. 1982).

27

1   The following factors may be evidence of fraud:

2           (1) concealment of assets;

3           (2) concealment of ownership;

4           (3) consistent and substantial understatement of income;

5           (4) inadequate records;

6           (5) inconsistent or implausible explanations of behavior;

7           (6) failure to file tax forms;

8           (7) failure to cooperate with tax authorities;

9           (8)  any conduct which is likely to mislead or conceal.

10  *Spies v. United States*, 317 U.S. 492, 499 (1943)*;  Estate of Trompeter v. Commissioner*, 279

11  F.3d 767, 773 (9th Cir. 2002); *Akland v. Commissioner*, 767 F.2d 618, 621 (9th Cir. 1985);

12  *Bradford v. Commissioner*, 796 F.2d 303, 307-08 (9th Cir. 1986).  Another badge of fraud is a

13  taxpayer's use of a complex series of financial transactions and nominees. *See Graham v.*

14  *Commissioner*, T .C. Memo. 2005–68, *aff'd*. 257 Fed. Appx. 4 (9th Cir. 2007).

15          In his criminal case, Dr. Shearer plead guilty to conspiracy to defraud the United States

16  under 18 U.S.C. § 371, and filing false tax returns in violation of 26 U.S.C. § 7206(1).  Collateral

17  estoppel based on the false return conviction does not apply to prevent Dr. Shearer from

18  arguing that he had no fraudulent intent. *Considine v. United States*, 683 F.2d 1285 (9th Cir.

19  1982). However, the conviction alone is persuasive evidence of fraudulent intent.  Combined

20  with the detailed facts of the plea agreement, which Dr. Shearer should not be permitted to

21  retract, fraudulent intent is established.

22          Collateral estoppel bars "successive litigation of an issue of fact or law actually litigated

23  and resolved in a valid court determination essential to the prior judgment, even if the issue

24  recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892, (2008)

25  (quotations and citation omitted). As applied to criminal proceedings, "[a] prior conviction will

26  estop a party from contesting in a later civil suit any element necessarily established in the

27  criminal trial."  *Considine v. United States*, 683 F.2d 1285, 1286 (9th Cir.1982).  Collateral

    estoppel may only be invoked by a party when: (1) the party to be bound by the estoppel was

1    either a party to the prior suit or in privity with a party to the prior suit; (2) the issue to be

2    litigated is identical to an issue that was necessarily decided in the prior case; and (3) the prior

3    proceeding ended with a final judgment on the merits. *See In Re Reynoso*, 477 F.3d 1117,

4    1122 (9th Cir. 2007).

5        To prove a conspiracy under 18 U.S.C. § 371, "the government need only show (1) [the

6    defendant] entered into an agreement (2) to obstruct a lawful function of the government (3) by

7    deceitful or dishonest means and (4) at least one overt act in furtherance of the conspiracy."

8    *United States v. Caldwell*, 989 F.2d 1056, 1059 (9th Cir.1993); *United States v. Meredith*, 685

9    F.3d 814, 822 (9th Cir. 2012) *cert. denied*, 133 S. Ct. 563 (U.S. 2012).  The elements of the

10   charge are adjudicated as a matter of law in a criminal conviction – *Considine*, 683 F.2d 1287 –

11   and the facts set forth in the plea agreement (Jennings Decl. Ex. B) are consistent with the

12   elements set forth in this paragraph.

13       Although a conspiracy to defraud conviction under 18 U.S.C. § 371 will preclude a

14   defendant from defending certain types of civil fraud,[4] Dr. Shearer is not barred by his

15   conviction from asserting a defense in this case.  *Mobley v. Commissioner*, 65 T.C.M. (CCH)

16   1939 (T.C. 1993) *aff'd by unpublished opinion*, 33 F.3d 1382 (11th Cir. 1994) (taxpayer's

17   conviction under 18 U.S.C. § 371 does not collaterally estop him from challenging the allegation

18   of civil fraud); *Considine v. United States*, 683 F.2d 1285, 1286 (9th Cir.1982) (conviction under

19   26 U.S.C. § 7206 for false return did not bar argument on fraudulent intent).

20       However, convictions under statutes requiring deception are *persuasive evidence* of

21   fraud. *Mobley, id, Morse v. Commissioner*, T.C. Memo. 2003-332, *aff'd* 419 F.3d 829 (8th Cir.

22   2005); *Parsons v. Commissioner*, T.C. Memo. 2000-205;  *Plotkin v. Commissioner*, 102 T.C.M.

23   (CCH) 450 (T.C. 2011) *aff'd*, 498 F. App'x 954 (11th Cir. 2012) *cert. denied*, 133 S.Ct. 1829

24   (2013).  Dr. Shearer's conviction itself is evidence that he acted in a fraudulent manner.  The

25

26   _____

27       [4]For example, such convictions are sufficient to deny a discharge in bankruptcy.  *In re Summers*, 266 B.R. 292, 297-98 (Bankr. E.D. Pa. 2001) (guilty plea under 18 U.S.C. § 371, along with facts from information, sufficient to show that taxpayer willfully attempted to evade or defeat tax under 11 U.S.C. §  523(a)(1)(C)); *In re Wright*, 251 B.R. 326, 332 (Bankr. W.D. Tex. 2000) (convictions under 18 U.S.C. § 371 and 26 U.S.C. § 7201 prevented taxpayer from relitigating whether he willfully attempted to evade tax under the Bankruptcy Code).

1  facts he admits add to this evidence.

2      The detailed facts set forth in the plea agreement are sufficient to show by clear and

3  convincing evidence that Dr. Shearer had a fraudulent intent as a matter of law.  The Court

4  should judicially estopp Dr. Shearer from withdrawing the admissions made in the criminal

5  case.   Dr. Shearer obtained a benefit by his plea agreement in the prior proceeding and should

6  be held to the representations he made there.  *Thore v. Howe*, 466 F.3d 173, 179 (1st Cir.

7  2006) (judicial estoppel prevented civil plaintiff from contradicting facts in his plea agreement).

8      The offshore loops of unreported income support a finding of intent to evade.  Individuals

9  sometimes enjoy foreign vacations, tasting new foods and experiencing different cultures, but

10  money goes offshore for different reasons.  Diversification of investment is often advised, but

11  the domestic market is well-stocked with the American Depository Receipts[5] of foreign firms

12  and investment funds specializing in foreign exposure, so there is no need to leave home for

13  this reason.  Of course, investments held in this country would be reported to regulatory

14  authorities.  Money that takes a quick round-trip offshore, as with the Crockett scheme, has no

15  reason to travel other than to evade the scrutiny of taxing authorities.  Dr. Shearer admits that

16  this cycling of income offshore was part of a conspiracy to conceal such income from the

17  Internal Revenue Service.  Facts. ¶ 5.

18      "Abusive trust arrangements often use trusts to hide the true ownership of assets and

19  income or to disguise the substance of transactions," and "frequently involve more than one

20  trust." I.R.S. Notice 97–24, 1997–16 I.R.B. 6 (Apr. 21, 1997).  One factor courts use to

21  determine whether a trust scheme is abusive is whether the taxpayers' relationship to their

22  assets and income changed after the trusts were created, in other words, whether the trusts

23  had economic substance.  Transferring a personal residence and income-producing assets to a

24  trust may be evidence of fraud.  Placing a personal residence in a trust does not make it

25  depreciable for tax purposes while the owner lives there.  *Richardson v. Commissioner*, 509

26  F.3d 736, 741 (6th Cir. 2007);  *Sparkman v. Commissioner*, 509 F.3d 1149, 1154-1155 (9th Cir.

27

---

[5]An ADR is a negotiable security that represents securities of a non-United States company
that trades in the United States financial markets.

US MSJ - Memo

2007); *United States v. Estate Preservation Services*, 202 F.3d 1093, 1101 (9th Cir. 2000); *Zmuda v. Commissioner*, 731 F.2d 1417 (9th Cir. 1984); *Hanson v. Commissioner*, 696 F.2d 1232, 1234-35 (9th Cir. 1983).  The trust scheme discussed in *Richardson v. Commissioner* is very similar to the scheme used by Dr. Shearer.  In both cases, homes and income were channeled through multiple trusts to improperly conceal taxable income.  But the Shearers retained enjoyment and control of their house, office, and income, so the economic substance did not change.

 ''To anyone not incorrigibly addicted to the 'free lunch' philosophy of life, the entire [family trust] scheme had to have been seen as a wholly transparent sham.''  *Harris v. Commissioner*, 41 T.C.M. (CCH) 815 (1981), quoted in *Richardson v. Commissioner*, 509 F.3d at 742.  A taxpayer cannot reduce tax by transferring income-producing assets to trusts while retaining control of the assets. *Id.*

That the trusts might be valid under state law, does not make them legitimate for federal income tax purposes.   *Richardson v. Commissioner*, 509 F.3d at 742.  However, the Shearer trusts are also invalid under California law.  "It is well-settled that a trust created for the purpose of defrauding creditors or other persons is illegal and may be disregarded." *In re Schwarzkopf*, 626 F.3d 1032, 1037 (9th Cir. 2010); *quoting In re Marriage of Dick*, 15 Cal.App.4th 144, 18 Cal.Rptr. 2d 743, 752 (1993); *see also* Cal. Prob. Code § 15203 ("A trust may be created for any purpose that is not illegal or against public policy").  *See* 1A Scott on Trusts § 63 (4th ed. 2001) ("Although the terms of the trust in themselves are perfectly lawful, the trust is illegal where the motive of the settlor for creating the trust is to defraud creditors or another person").  In the plea agreement, Dr. Shearer admitted that the trust transfers were intended to defraud the United States by concealing income from the Internal Revenue Service. (Facts ¶ 5.)

Dr. Shearer, a highly trained professional, chose not to review the legality of the trust arrangement with a highly trained tax counsel, and this choice also shows his intent to conceal. Lawyers and doctors are licensed not just to restrict competition, but also to avoid the type of debacle triggered when a non-lawyer begins creating fictitious entities with the intention of reducing taxes or cheating other creditors.  Talking about this type of arrangement, a court in

1983 said "No reasonable person would have trusted this scheme to work." *Hanson v. Commissioner*, 696 F.2d 1232, 1234-35 (9th Cir. 1983).  Dr. Shearer's sophistication must be taken into account in assessing his intent. *Considine v. United States*, 683 F.2d 1285 (9th Cir. 1982).

For many of the same reasons the court in *Richardson v. Commissioner* upheld the fraud penalty against the abusive trust taxpayers in that case, this Court should consider the totality of the circumstances set forth in the admissions of Dr. Shearer and find that the fraud penalty applies.  An intelligent and sophisticated professional, who failed to consult a lawyer before transferring three properties into multiple trusts, and who admitted an intention to obstruct the lawful functions of the Internal Revenue Service, who in actuality retained control of all his assets, while sending his income on brief holidays abroad, clearly took deliberate steps to evade income tax and to mislead or conceal.  As a matter of law, the facts admitted show the type of intent which justifies the imposition of the fraud penalty.  *Considine v. United States*, 683 F.2d 1285 (9th Cir. 1982) (summary judgment upheld on fraud penalty intent to evade based on facts surrounding false tax return conviction); *Voccola v. Commissioner*, 97 T.C.M. (CCH) 1052 (T.C. 2009) (deemed admissions are sufficient to meet government burden of proof for the section 6663 fraud penalty for summary judgment).

## CONCLUSION

The Shearers owe the unpaid individual income tax liabilities reported on their amended tax returns and have not produced any evidence that the IRS accounts are in any way deficient. The facts admitted by Dr. Shearer in his plea agreement and the facts adduced in discovery show that Dr. Shearer willfully attempted to conceal unreported income from the IRS through the use of Crockett-related trusts.  The Court is respectfully requested to enter judgment on the current balance of the tax liabilities, reported in the declaration of Revenue Agent Yang, and to uphold the fraud penalty on the 1995-1999 tax years.  The current balance due, with interest to September 30, 2014, is in the total amount of $368,377.94.  Decl. Yang, Ex. J-P

The following issues are reserved for trial: (1) whether the trusts continue to hold the Shearers' property as nominees or fraudulent transferees, and (2) whether the United States

*US MSJ - Memo*

1   may enforce the judgment against the properties.

2
                                    Respectfully submitted,
3

4                                   TAMARA W. ASHFORD
                                    Acting Assistant Attorney General
5

6   Date: August 18, 2014           */s/ G. Patrick Jennings*
                                    G. PATRICK JENNINGS
7                                   Trial Attorney, Tax Division
                                    U.S. Department of Justice
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

*US MSJ - Memo*