TAMARA W. ASHFORD
Acting Assistant Attorney General

G. PATRICK JENNINGS
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C.  20044-0683
Telephone:   (202) 307-6648
E-mail:       *Guy.P.Jennings@usdoj.gov*

Attorneys for the United States of America

BENJAMIN B. WAGNER
United States Attorney

Of Counsel

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> L. RICHARD SHEARER; <br> DIANE SHEARER; <br> STANLEY SWENSON as Trustee of the <br> HOTLUM TRUST, BERRYVALE TRUST, and <br> REGENCY TRUST; <br> CARL S. WILSON; CAROL WILSON; <br> EVELYN LOUISE SHEARER, as Trustee of <br> the EVELYN LOUISE REVOCABLE TRUST; <br> VERNON L. SWENSON; LEORA SWENSON; <br><br> Defendants. | Civil No.  2:12-CV-02334 TLN AC <br><br> **DECLARATION OF REVENUE AGENT NANCY YANG IN SUPPORT OF UNITED STATES MOTION FOR SUMMARY JUDGMENT** |

I, Nancy Yang, declare and state:

1. I am a Revenue Agent for the Internal Revenue Service.  I was assigned to examine amended tax returns provided by L. Richard Shearer and Diane Shearer (the "taxpayers").

2. In my capacity as a Revenue Agent, I am familiar with IRS records, the IRS Integrated

1  Data Retrieval System ("IDRS"), and transcripts of account. I am also familiar with IRS
2  procedures and processes. In my capacity as a Revenue Agent, my duties include tax
3  determination and referring instructions to abate tax in appropriate circumstances.

3. In the course of my duties, I have access to the IRS' files concerning the taxpayers' unpaid federal tax liabilities for tax years 1995 through and including 2001 (the "years at issue").

4. I make this declaration from my personal knowledge and from review of IRS computer records.

5. The taxpayers filed original, joint individual income tax returns for the 1995–1999 taxable years. Before I was assigned to the case, the original returns were examined by a different Revenue Agent and additional tax was assessed for each year. I reviewed the original Form 4549A, "Income Tax Examination Changes." A copy of the Form 4549A is attached as Exhibit A.

6. In Exhibit A the previous Revenue Agent determined that the taxpayers had transferred income to trusts which lacked economic substance for federal tax purposes and which were operated for tax avoidance purposes. The trusts identified in Exhibit A are Asteroid Black Management Co. and Regency Trust. The previous Revenue Agent concluded that the use of the trusts resulted in the taxpayers failing to report gross and rental income.

7. In Exhibit A the previous Revenue Agent concluded that the fraud penalty applied to the tax liabilities for each year from 1995 through 1999, adding a 75% penalty to the additional tax assessed.

8. The tax examination changes proposed in Exhibit A were assessed in 2004, as I confirmed in the IDRS transcripts for each year, discussed below. The IRS relies on the Integrated Data Retrieval System ("IDRS") to store and track tax account information.

9. In 2008, the taxpayers provided amended tax returns for 1995-1999 which disregarded the trusts for tax purposes. I re-examined the amended returns and some of the

- 2 -   *US MSJ - Decl. Yang*

taxpayers' records and made some minor corrections to the calculations on the amended returns.  After the corrections, I determined that the remaining income and expenses reported on the amended returns should be accepted and that the original tax and penalties described in Exhibit A should be reduced.  I prepared a second Form 4549A, "Income Tax Examination Changes."  With the cover letter dated February 27, 2008, the second Form 4549A is attached as Exhibit B.

10. The slight corrections to the amended returns are described on page 0001 of Exhibit B.

11. The reductions in tax and penalties from those listed in Exhibit A are listed at page 0003 and 0004 of Exhibit B.  The adjustments in Exhibit B do not stand alone.  I intended them to reflect abatements which would be applied to the existing assessments of tax which resulted from Exhibit A in 2004.  As I noted in my cover letter at Exhibit B, the determination was to reduce – but not to eliminate – the amount of tax and penalty owed.  The proper method to determine the tax and penalty owed is to subtract the numbers in Exhibit B from the numbers in Exhibit A.  I have confirmed that the taxpayers' IRS accounts have been abated to match the adjustments in Exhibit B.

12. For example, for the 1995 year, the reduction in fraud penalty is (107,222.00).  (Ex. B, p. 0004, l. 18).  The parentheses refer to a negative dollar amount.  The original fraud penalty assessment for 1995 was $135,404.25.  (Ex. A, p. 2).  Subtracting the Exhibit B figure from the corresponding Exhibit A figure yields $28,182.25. (135,404.25 - 107,222.00 = 28,182.25).  This is the amount of the fraud penalty for 1995 which remained assessed against the taxpayers after the adjustments in Exhibit B.

13. Continuing with the example of the 1995 fraud penalty, I attach a true and correct copy of the IDRS transcript for the taxpayers' 1995 federal individual income tax account as Exhibit C.  I can see at page 3 in Exhibit C that the remaining fraud penalty assessment is $28,182.25.  The "TC" column to the right of page 3 refers to "Transaction Code."  I know that the transaction code 320 refers to a fraud penalty assessment.  I confirmed this by consulting my on-line reference for the IDRS transaction codes.  The date in the

1 "DATE" column next to TC 320 corresponds to the original assessment date in 2004.

14. Staying with the 1995 fraud penalty example, the assessment of $28,182.25 as a fraud penalty in 2004 may be confusing, because we know from Exhibit A that the 1995 fraud penalty determined was $135,404.25.  Turning to page 5 of Exhibit C, I see a transaction code 321, which is an abatement of fraud penalty.  This amount is the negative 107,222.00 adjustment that I determined in Exhibit B. (See ¶ 12, above).  Just below is a positive assessment of fraud penalty also in the amount of 107,222.00.

15. The 2008 fraud penalty adjustment to the taxpayers account was accomplished by splitting the original $135,404.25 assessment into two on the IDRS account, one at page 3 of Exhibit C in the amount of $28,182.25 and one on page 5 of Ex. C in the amount of $107,222.00.  The two figures add to $135,404.25, the original fraud penalty assessed for 1995. (28,182.25 + 107,222 = 135,404.25) I can see the two split assessments are related because they have the same "DLN" (document locator number), the same cycle, and the same assessment date.  After splitting, the page 5 assessment was abated with the code 321, leaving as assessed only the page 3 fraud penalty assessment of $28,182.25.

16. I can see that this is the correct assessment by comparing it to the amount of tax assessed for 1995.  The original assessment was in the amount of $180,539.00.  (Ex. A, p. 3, Ex. C, p. 3, code 300).  In Exhibit B – p. 4, l. 19(a) – I determined that a negative adjustment to tax in the amount of 153,765 should be entered.  (180,539 - 153,765 = 26,774). I see this adjustment at page 5 of Ex. C with the code 301 ("Abatement of Tax"). To the remaining tax assessment is added the original assessment with the tax return of 8,326 (Ex. C, p. 1, code 150 – "Return filed & Tax Liability Assessed") plus an earlier audit assessment of 2,477 (Ex. C, p. 2, code 300) for a total tax assessment of $37,577.00 after the adjustments in 2008. (26,774 + 8,326 + 2,477 = 37,577).  75% of $37,577.00 is $28,182.75.  (37,577 x .75 = 28,182.75).  This is within pennies of the amount of the fraud penalty determined in paragraph 15, above (28,182.25).  The

- 4 -

1       difference in favor of the taxpayer is probably a rounding error.

2 17.   The fraud penalty imposed by 26 U.S.C. § 6663 is 75% of the tax attributable to the fraud. This law has changed over different years and I confirmed that this current version was applicable to the 1995 tax year, and to all the years at issue in this case.

18. I conclude from the example of the fraud penalty and tax for 1995 that the adjustments I proposed in Ex. B were properly entered into the IDRS system to reduce the tax and penalty owed by the taxpayers. I checked several of the other years in this same way and found the adjustments consistent with Ex. B and with the proper calculation of the fraud penalty.

19. True and correct copies of the IDRS account transcript for each tax year is attached as follows: D - 1996, E - 1997, F - 1998, G - 1999, H - 2000, I - 2001.

20. The 2000 and 2001 taxable years do not contain fraud penalties. The tax, penalties, and interest were assessed based on amended tax returns which were filed by the taxpayers without including a full payment of the tax shown due. Later payments fully paid those tax years.

21. The IDRS account shows credits to the account, including payments made by the taxpayers, and calculates the accrual of interest once the correct assessed balances are established. The current balance with interest to September 30, 2014, (assuming no payments in the interim) are shown on the attached IDRS INTSTD transcripts, listed in the table below.

22. The outstanding balance of the federal income tax liabilities due from L. Richard Shearer and Diane Shearer for the tax years 1995 - 2001, including statutory accruals up through September 30, 2014, is summarized in the table below. However, until payment is received interest continues to be compounded daily pursuant to I.R.C. § 6622.

[Cont.]

| Tax Period | Exhibit No. | Unpaid Balance as of September 30, 2014 |
|---|---|---|
| 1995 | Ex. J | 128,469.21 |
| 1996 | Ex. K | 54,230.19 |
| 1997 | Ex. L | 83,930.48 |
| 1998 | Ex. M | 90,191.25 |
| 1999 | Ex. N | 14,243.10 |
| 2000 | Ex. O | Credit Balance   [2,686.29] |
| 2001 | Ex. P | Zero Balance   .00 |
|  | **TOTAL** | **368,377.94** |

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  August 15, 2014

                                               */s/ Nancy X. Yang*
                                               NANCY X. YANG
                                               Revenue Agent
                                               Internal Revenue Service