UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>L. RICHARD SHEARER, *et. al*.;<br><br>Defendants. | No. 2:12-cv-02334-TLN-DB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

This matter is before the Court on Plaintiff the United States of America's ("Plaintiff") Second Motion for Partial Summary Judgment. (ECF No. 65.) Defendant L. Richard Shearer and Defendant Diane Shearer (collectively, "Shearers") oppose the motion. (ECF No. 69.) Defendant Stanley Swenson, as Trustee of the Holcum Trust, Berryvale Trust, and Regency Trust, ("Trustee") also opposes the motion. (ECF No. 70.) Plaintiff has replied. (ECF No. 74.) For the reasons discussed below, the Court GRANTS Plaintiff's Second Motion for Partial Summary Judgment, (ECF No. 65).

///
///
///
///

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

The Shearers, a husband and wife, are residents of Siskiyou, California. (ECF No. 4 ¶ 5.) L. Richard Shearer is a medical doctor who practiced in Siskiyou, California from 1995-2001. (ECF No. 53 at 2.) Beginning no later than 1995, he "deposited substantial net income from his medical practice into a bank account he controlled that was in the name of a trust he controlled." (ECF No. 53 at 3.) Farr West Consulting ("Farr West") and a co-defendant in the criminal case, Lonnie Crockett ("Crockett"), submitted invoices from a bank account in Utah controlled by Crockett to the medical practice for payment of alleged services. (ECF No. 53 at 3–4.) These amounts correlated to transfers routed by Crockett through offshore accounts. (ECF No. 53 at 4.)

The payment of money from the medical practice "into trust accounts for trust entities owned and operated by Farr West and Crockett were a series of sham transactions which had no economic purpose." (ECF No. 53 at 3.) Crockett was paid a fee for these transfers. (ECF No. 53 at 3.) Plaintiff refers to these transactions as a "loop." (ECF No. 53 at 3.) The "funds realized as income from [the] medical practice were not reported on [the Shearer's] joint individual income tax return prepared by the accountants provided by" Farr West and Crockett. (ECF No. 53 at 4.)

In 2001, L. Richard Shearer pleaded guilty, pursuant to a plea agreement, to one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and one count of making and subscribing to false tax returns, in violation of 26 U.S.C. § 7206(1). (ECF No. 67 at 5.)

The IRS audited the Shearer's account and calculated back tax, including all unreported income but no business deductions. (ECF No. 66-2 at 13.) The Shearer's filed amended returns that disregard the trusts, which the IRS accepted with minor corrections. (ECF No. 53 at 5.) The IRS substantially reduced the tax for 1995-1999 but retained fraud penalties. (ECF No. 53 at 6.)

Plaintiff filed this civil action to reduce the joint federal tax assessments against Defendants, to establish that three trusts are nominees, or alter egos, of Defendants and set aside fraudulent transfers, and to foreclose federal tax liens on real property. (ECF No. 4 ¶¶ 25, 32, 39, 48.) Plaintiff moves for "an adjudication of the tax, interest and fraud penalty liabilities, and that the statute of limitations does not bar this action." (ECF No. 65 at 2.) Plaintiff states it reserves for trial the remaining nominee, fraudulent transfer, and foreclosure issues. (ECF No. 65 at 2.)

## II. STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

### III. ANALYSIS

Plaintiff moves for judgment on tax, interest and fraud penalty liabilities against the Shearers, and that two statutes of limitation do not bar this action. (ECF No. 65 at 2.) The parties agree the Shearers owe the income tax liabilities they reported on their amended tax returns but did not pay. (ECF No. 69 at 9; ECF No. 65-1 at 12–13.) Accordingly, Plaintiff is entitled to judgment in its favor that the Shearers owe the unpaid tax reported on their amended returns.

The parties disagree about whether L. Richard Shearer ("Dr. Shearer") had specific fraudulent intent to evade taxes as a matter of law. Both remaining issues, whether Plaintiff is entitled to judgment that the fraud penalties apply and whether Plaintiff's claims are barred by a statute of limitations, depend on the answer.

Plaintiff argues the factual basis in Dr. Shearer's criminal plea agreement shows he had fraudulent intent. (ECF No. 65-1 at 16.) The Shearers argue Plaintiff is prohibited from relying

4

on the plea agreement in this civil action.  (ECF No. 69 at 9.)  The Shearers argue that without the plea agreement Plaintiff cannot establish fraudulent intent as a matter of law by clear and convincing evidence.  (ECF No. 69 at 6.)  The Shearers argue a genuine issue of material fact exists as to whether Plaintiff properly asserted fraud penalties against Dr. Shearer, imputed fraud intent to Ms. Shearer, and applied the correct statute of limitations.  (ECF No. 69 at 5–6.)

The sentence at issue in the plea agreement reads: "The defendant understands that nothing in this agreement affects the defendant's personal federal tax liability, or restricts the United States or the Internal Revenue Service from initiating any collection or civil enforcement action relating thereto."  (ECF No. 41-2 at 3.)  The Shearers argue the first clause, "nothing in this agreement affects the defendant's personal federal tax liability," establishes that the plea agreement cannot be used in a civil enforcement action.  (ECF No. 69 at 10–11.)

Plea agreements are contractual in nature and measured by contract law standards.  *United States v. De La Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993); *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000), cert. denied, 531 U.S. 1057 (2000).  Courts generally construe terms in a plea agreement according to their common legal usage.  *United States v. Striech*, 560 F.3d 926, 930 (9th Cir. 2009).  The court should only turn to extrinsic evidence when the word used does not have a clear and unambiguous meaning.  *United States v. Ajugwo*, 82 F.3d 925, 928 (9th Cir. 1996); *Clark*, 218 F.3d at 1095 ("If, however, a term of a plea agreement is not clear on its face, we look to the facts of the case to determine what the parties reasonably understood to be the terms of the agreement.").  Any ambiguity is generally decided against the government, the plea agreement's drafter.  *De La Fuente*, 8 F.3d at 1338.  The existence of an ambiguity in a contract is a matter of law.  *Local Motion, Inc. v. Niescher*, 105 F.3d 1278, 1280 (9th Cir. 1997).

The Shearers seek to read the first clause of the sentence in isolation.  Established principles of contract law, however, require contract language be read in context.  *Clark*, 218 F.3d at 1096 (the plain language of the term is examined in context).  In context, as part of the scope of the agreement, this sentence unambiguously clarifies that Dr. Shearer's criminal guilty plea does not remove civil liability or prevent the government from initiating a civil action.  *Striech*, 560 F.3d at 930.

The Shearers argue Dr. Shearer negotiated with the government not to oppose his application to continue practicing medicine as part of the plea agreement, and this shows his intention his criminal plea would be used as little as possible against him in civil matters. (ECF No. 69 at 11.) Dr. Shearer provides a declaration stating the same and explaining he "envisioned" his plea to be "akin to a nolo contendre plea that would have criminal law consequences, but not civil law consequences." (ECF no. 69 at 12.) The Shearer's argue "the plea agreement, although calling for a plea of guilty, was the functional equivalent of a 'no contest' or nolo contendre plea," and note "[nolo] pleas and statements made during the entry of such pleas are inadmissible by rule in civil matters." (ECF No. 69 at 13–14) (citing Federal Rule of Evidence 410(a)). The Shearers argue this raises a genuine issue of material fact for trial. (ECF No. 69 at 15.)

Whether there is an ambiguity in a contract is a matter of law not fact. *Local Motion, Inc. v. Niescher*, 105 F.3d 1278, 1280 (9th Cir. 1997). Courts only look to extrinsic evidence, such as declarations, when the contract terms are ambiguous. *Ajugwo*, 82 F.3d at 927; *Clark*, 218 F.3d at 1095. As discussed above, the sentence was unambiguous.

Dr. Shearer's declaration that he thought his plea was "akin" to a nolo contendre plea is not reasonable and does not change this analysis. While evidence presented by a nonmoving party is to be believed, conclusory testimony in affidavits and moving papers is insufficient to raise genuine issues of material fact and defeat summary judgment. *In re Deep Vein Thrombosis Litig.*, 2007 WL 2029326, at *3 (N.D. Cal. July 10, 2007) (*citing Anderson*, 477 U.S. at 255 and *Thornhill Publishing Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The Shearers' conclusory statements are not evidence, *Id.*, they do not cite to record evidence which supports their statements, and their statements are contrary to the evidence in the record, including the plea agreement which the Shearers acknowledge was not a nolo contendre plea agreement. The Shearers to do not cite any authority to support their position that the terms of the plea agreement were ambiguous or that Dr. Shearer's guilty plea was the "functional equivalent" of a nolo plea and the Court should deem the plea agreement inadmissible, (ECF No. 69 at 14–15), though the parties chose not to negotiate a nolo contendre plea agreement at the time. Accordingly, Plaintiff may use the plea agreement in litigating this civil action.

6

The remaining question on this issue is whether Plaintiff presented evidence sufficient to establish by clear and convincing evidence that Dr. Shearer had the specific intent to evade taxes.

Tax fraud is "intentional wrongdoing" by the taxpayer with the specific intent to evade a tax known to be owing." *Estate of Trompeter v. C.I.R.*, 279 F.3d 767, 773 (9th Cir. 2002). The government has the burden of proof to establish fraud by clear and convincing evidence. *Maciel v. C.I.R.*, 489 F.3d 1018, 1026 (9th Cir. 2007). The government can prove fraud by direct evidence, or a court may infer fraud from the existence of certain badges of fraud, including: (1) understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations; (5) concealing assets; (6) failure to cooperate with tax authorities; (7) use of a complex series of financial transactions and nominees, and (8) conduct, the likely effect of which would be to mislead or conceal. *Id.*; *Estate of Trompeter*, 279 F.3d at 773.

The Court may consider the elements of the charges to which Dr. Shearer pleaded guilty, one count each of conspiracy to commit to defraud the United States and making or subscribing to false tax returns, (ECF No. 67 at 5.) *Considine v. United States*, 683 F.2d 1285, 1286–87 (9th Cir. 1982) (prior conviction estops a party from contesting in a civil suit any element necessarily established in the criminal trial). The elements of 26 U.S.C. § 7206(1) are: understating income, knowing the information was false, and acting willfully. 26 U.S.C. § 7206(1). The first badge of fraud is understatement of income and Dr. Shearer cannot dispute that he understated income. *United States v. Richardson*, 2006 WL 3388347, at *5 (D. Ariz. Nov. 21, 2006)

Dr. Shearer admitted in his plea agreement that as part of the conspiracy he entered into sham transactions moving income from trusts, to banks in Utah, then off shore, and back to his bank account, all to conceal income from the IRS.[1] (ECF No. 41-2 at 14.) He admitted he reported a small portion of income from his medical practice for the relevant tax years, concealed a much larger portion through the system of accounts, and did not report that larger portion on his returns. (ECF No. 41-2 at 15.) Dr. Shearer admitted that just for tax year 1998, he reported

---

[1] Dr. Shearer now denies these transactions were in furtherance of the conspiracy though admits they were sham transactions with no economic purpose. (ECF No. 53 at 3.) However, an action in furtherance of the conspiracy is an element of one of the crimes of which Dr. Shearer was convicted, Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371, and Dr. Shearer admitted these actions were taken in furtherance of the conspiracy, so he is estopped from disputing the contention. *See Considine*, 683 F.2d at 1286.

taxable income of only $17,000 and he failed to report over $100,000 more in income he earned through his medical practice that year. (ECF No. 41-2 at 16.)

The third, fifth, and eighth badges of fraud are concealing assets, use of a complex series of financial transactions and nominees, and conduct likely to mislead or conceal. Use of trusts and cycling of income in transactions with no economic substance are indicative of complex transactions aimed at concealing income from the IRS. *See Graham v. C.I.R.*, T.C. Memo. (RIA) 2005-068 at *18–19. The government has shown by clear and convincing evidence Dr. Shearer engaged in conduct with the intent to evade taxes that he knew or believed to by owing. *Maciel*, 489 F.3d at 1027 (stating the court was entitled to evaluate the taxpayer's intent with respect to an allegation of concealed investment income in light of the taxpayer's "consistent, substantial understatements of income for several years" in finding the taxpayer acted fraudulently); *cf. United States v. Richardson*, 2006 WL 3388347, at *5 (D. Ariz. Nov. 21, 2006) (finding genuine issue remained where the taxpayer claimed the individual to whom he transferred the property contributed funds to purchase it and that the taxpayer rented the property from that individual.)

If the government meets its burden, the taxpayer must show by a preponderance of evidence that no portion of the payment was the result of fraud to be relieved of liability. 26 U.S.C. § 6663(b). The Shearers only argument is that Plaintiff improperly relies on Dr. Shearer's plea agreement and without the plea agreement Plaintiff cannot establish fraud. (ECF No. 69 at 9.) As determined above, Plaintiff can rely on the plea agreement and factual basis for that plea.

Taking the facts in the light most favorable to the Shearers, and drawing all reasonable inferences in their favor, *Anderson*, 477 U.S. at 255, no rational trier of fact viewing the evidence put forward could find in their favor, so there is no genuine issue of material fact for trial that Dr. Shearer had the specific fraudulent intent to evade taxes. *Matsushita*, 475 U.S. at 587.

If the government establishes any portion of the taxpayer's unpaid tax is due to fraud, the entire underpayment is treated as due to fraud, and a fraud penalty of a percent of the tax due is added to the tax. 26 U.S.C. § 6663(a)-(b). Plaintiff has established Dr. Shearer's fraudulent intent with respect to underpayments for tax years 1995-1999. Accordingly, Plaintiff is entitled to judgment in its favor that fraud penalties were properly assessed for tax years 1995-1999.

8

The Shearers argue that even if the Court finds Dr. Shearer had the requisite fraudulent intent and that the fraud penalties were properly assessed, Dr. Shearer's fraudulent intent cannot be imputed to Mrs. Shearer. (ECF No. 69 at 6, 16 n.1.) Plaintiff does not argue Dr. Shearer's intent can be imputed to Mrs. Shearer, but rather that there is an independent basis for liability – married joint filers are jointly and severally liable under 26 U.S.C. § 6013(d). (ECF No. 74 at 5).

"Married couples who file joint returns are generally jointly and severally liable for the full amount of tax due on their combined incomes." *Ordlock v. C.I.R.*, 533 F.3d 1136, 1138 (9th Cir. 2008) (citing § 6013(d)(3)). The Shearers were married and filed joint tax returns for tax years 1995-1999. (ECF No. 55 ¶¶ 2, 11.) Mrs. Shearer is jointly and severally liable with Dr. Shearer. 26 U.S.C. § 6013(d)(c). An "innocent spouse" who is jointly and severally liable for a joint return may seek relief from joint liability within two years of the date collection begins. *Ordlock*, 533 F.3d at 1139; 26 U.S.C. § 6015(b)(1)(E). Mrs. Shearer does not assert an innocent spouse defense in her amended answer to this suit. (ECF No. 61 ¶¶ 24–28.) Prior to filing their amended answer, the Shearers filed notice "that they are withdrawing their affirmative defense of Innocent Spouse in their proposed Amended Answer." (ECF No. 51 at 1.) Mrs. Shearer does not allege she sought innocent spouse relief within the required two years under § 6015.

Plaintiff also moves for judgment that the statute of limitations under California law and the Federal Debt Collection Procedures Act ("FDCPA") do not apply to its claim to set aside certain transfers as fraudulent under California's Uniform Fraudulent Transfer Act ("CUFTA") and do not bar this action, arguing the "unlimited statute of limitations" in 26 U.S.C. § 6501(c)(2) applies to fraud. (ECF No. 65-1 at 19–22.) The Shearers argue this claim is barred by the three-year statute of limitations to assess tax unless Plaintiff prevails on the issue of the fraud penalty and 26 U.S.C. §§ 6501(c)(1) and (2) apply. (ECF No. 69 at 18.) The Trustee argues this claim is barred by the statute of limitations applicable to the FDCPA. (ECF No. 70 at 6–10).

Plaintiff brings its claim under 26 U.S.C. § 7403 to set aside fraudulent transfers of certain real property in California and subject the property to federal tax liens. (ECF No. 4 ¶ 2; ECF No. 65-1 at 19.) In seeking relief from fraudulent transfers of real property, the government looks to the applicable fraudulent transfer laws of the state in which the real property is located. *C.I.R. v.*

9

*Stern*, 357 U.S. 39, 45 (1958). In California, the relevant unlawful transfer statute is CUFTA, which provides a four-year statute of limitations. CAL. CIV. CODE §§ 3439.04(a); 3439.09(a). Plaintiff filed its complaint in 2012 regarding liability for tax years 1995-1999. (ECF Nos. 1, 4.)

Binding Ninth Circuit precedent holds tax fraud transfer suits pursuant to the Internal Revenue Code are subject only to the statute of limitations in federal law, not to the limitations in CUFTA. *Bresson v. C.I.R.*, 213 F.3d 1173, 1178-79 (9th Cir. 2000) (holding CUFTA's statute of limitations inapplicable when the right to collect money derives from the operation of federal law, the Internal Revenue Code, and must be made within the federal limitations period); *see also In re Pitts*, 668 F. App'x 774, 775 (9th Cir. 2016). Plaintiff brought its claim under 26 U.S.C. § 7403 of the Internal Revenue Code. "As a matter of federal law, Plaintiff's claim is not extinguished by California law." *Cook v. Layman*, 263 F. Supp. 2d 1234, 1239 (E.D. Cal. Jan. 22, 2003).

The Trustee argues Plaintiff's claim is barred by the six-year statute of limitations in the FDCPA, 28 U.S.C. §§ 3301–3308. (ECF No. 70 at 7). The Trustee argues Plaintiff's right to base a fraudulent transfer claim on state law was "superseded" by the FDCPA, in which government imposed on itself a six-year statute of limitations regarding fraudulent transfers. (ECF No. 70 at 7, 10.) The Trustee argues 28 U.S.C. § 3003(c) of the FDCPA lists areas to which FDCPA does not apply and the Internal Revenue Code is not listed. (ECF No. 70 at 10.)

Title 28 U.S.C. § 3003(c) states the FDCPA "shall not be construed to supersede or modify" several areas of law, and does not include tax collection or the Internal Revenue Code. 28 U.S.C. § 3003(c). The section immediately before it, § 3003(b)(1), however, states FDCPA does not "curtail or limit the right of the United States under any other Federal law or any State law to collect taxes." 28 U.S.C. § 3003(b)(1). Several out-of-jurisdiction district courts have found the FDCPA's statute of limitation does not apply to tax collection suits. *See McLain v. McLain*, 2017 WL 713548, at *5 (D. Mont. Feb. 23, 2017) (citing 28 U.S.C. § 3003(b) in finding in a fraudulent conveyance claim that, "[b]y its own terms, the FDCPA does not apply to Government actions to collect taxes."); *United States v. Letscher*, 83 F. Supp. 2d 367, 378 (S.D.N.Y. Sept. 27, 1999) ("The Debt Collection Act does not apply to Government actions to collect taxes."); *United States v. Bantau*, 907 F. Supp. 988, 990 (N.D. Tex. Sept. 26, 1995) ("as

this is a suit for the collection of taxes, the statute of limitations found in the FDCPA is not applicable."); *United States v. Arthur*, 2011 WL 4369425, at *4 (E.D. Mo. Sept. 19, 2011) (finding the government's fraudulent conveyance claim not subject to the statute of limitations in either the Missouri UFTA or the FDCPA).

The Trustee notes Plaintiff only cites cases which are not binding authority on this Court. (ECF No. 70 at 9.) Defendants have not cited any case law, in this or any other jurisdiction, which contradicts the decisions in the cases cited by plaintiff or found by this Court holding the FDCPA statute of limitations does not apply to tax collections actions. The language of §3003(b)(1) and the weight of authority support finding that Plaintiff's claim is not barred by the FDCPA's statute of limitations. *McLain*, 2017 WL 713548 at *5. Accordingly, the Court finds Plaintiff's suit is not barred by the statutes of limitation in either CUFTA or the FDCPA.

Finally, Plaintiff requests that if the tax liabilities and fraud penalties are upheld, that judgment be entered in Plaintiff's favor in the amount of $368,377.94, the balance due on the Shearer's account through September 30, 2014. (ECF No. 65-1 at 22.)

"In an action to collect taxes, the government bears the initial burden of proof." *In re Olshan*, 356 F.3d 1078, 1084 (9th Cir. 2004). The government may satisfy its burden by showing IRS assessments for unpaid taxes and penalties, "which are presumed correct so long as they are supported by minimal factual foundation." *Id.* (internal quotation marks and citations omitted). The taxpayer may rebut the presumption and shift the burden back to the IRS by showing that the IRS determination is "arbitrary, excessive, or without foundation." *Id.* If the taxpayer fails to rebut the presumption, the government is entitled to judgment as a matter of law. *Id.*

Plaintiff supports its calculation with the Declaration of Revenue Agent Nancy Yang, analyzing data from the IRS's Integrated Data Retrieval System ("IDRS"), showing the assessments, abatements, the applicable fraud penalty, and interest, and exhibits of data retrieved from IDRS. (ECF No. 37-3 ¶¶ 10–22; ECF No. 40 Exs. J–P.) Plaintiff has met its initial burden. *See In re Indian Wells Estates, Inc.,* 96 F .3d 1451, *4 (9th Cir. 1996) (rejecting an argument "the IRS failed to meet its burden of proof on the award of interest" in part because the IRS provided "detailed computer printouts and an accompanying explanation by an IRS expert in the field").

11

The Shearers do not dispute the calculations in their opposition.  In their responses to Plaintiff's Undisputed Facts 14–19, however, the Shearers deny the balances provided by the IRS for the relevant tax years are accurate, citing to paragraphs 30–31 of Dr. Shearer's declaration and paragraphs 24–25 of Mrs. Shearer's declaration for support.  (ECF No. 53 at 6–7.)  In these paragraphs, the Shearers do not dispute the calculations, but state they did not receive a new Notice of Deficiency after they filed amended returns.  (ECF No. 54 ¶¶ 30–31; ECF No. 55 ¶¶ 24–25.)  The Court already addressed that argument in its July 3, 2018 Order.  (ECF No. 85 at 5.)

The Shearers have not identified any facts to cast doubt on the accuracy of the government's data, calculations, or application of applicable percentages, such as which interest rate or fraud penalty percentage apply.  The Shearers have not put forth any evidence that the government's evidence or arithmetic is deficient.  *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (taxpayers failed to present "specific facts" to rebut the IRS's Form 4340, but merely cited to their own affidavit stating they did not receive notice).  Accordingly, the Court grants judgment in Plaintiff's favor on the current balance of tax liabilities and fraud penalties, for a total amount due through September 30, 2014, of $368,377.94.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Plaintiff's Motion for Partial Summary Judgement, (ECF No. 65).  The Clerk of the Court will enter judgment in Plaintiff's favor for the total amount due through September 30, 2014 of $368,377.94.

Further, the Court orders the parties to file a Joint Status Report within thirty (30) days of this Order indicating their readiness to proceed to trial and proposing trial dates.

IT IS SO ORDERED.

Dated: August 6, 2018

Troy L. Nunley
United States District Judge