Joe Alfred Izen, Jr.
5222 Spruce Street
Bellaire, TX 77401
(713) 668-8815 TEL
(713) 668-9402 FAX
jizen@comcast.net

Jihad M. Smaili, Esq.
SMAILI & ASSOCIATES, PC
Civic Center Plaza Towers
600 West Santa Ana Blvd., Suite 202
Santa Ana, California 92701
(714) 547-4700
(714) 547-4710 (f)
www.smaililaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>VS.<br><br>L. RICHARD SHEARER, DIANE SHEARER, STANLEY SWENSON, as Trustee of the HOTLUM TRUST, BERRYVALE TRUST, and REGENCY TRUST; ET AL<br><br>    Defendants. | NO. 2:12-CV-02334 TLN AC<br>DEFENDANTS, HOTLUM TRUST BERRYVALE TRUST, AND REGENCY TRUST'S, THROUGH, THEIR TRUSTEE, STANLEY SWENSON'S, RESPONSE AND OBJECTION TO THE UNITED STATES MOTION TO STRIKE JURY DEMAND<br><br>DATE:   OCTOBER 18, 2018<br>TIME:   2:00 P.M.<br>COURT:  2, 15TH FLOOR<br>JUDGE:  HON. TROY L. NUNLEY |

TO THE PRESIDING FEDERAL JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA:

COME NOW, Hotlum, Berryvale, and Regency Trusts, through their Trustee, Stanley Swenson, referred to collectively as ("THE TRUSTS"), hereinafter referred to as Defendants and file this their Response and Objection to the United States' Motion to Strike Jury Demand and, in support of their demand for a jury trial and in opposition to the Government's Motion to Strike such demand, would show the Court the following:

ANALYSIS OF PROCEDURAL POSTURE AND REMAINING CAUSES OF
ACTION, DEFENSES, CLAIMS, AND ISSUES IN CASE REMAINING
TO BE TRIED OR RESOLVED

I.

1.  This Court has previously granted the United States summary judgment against the Shearer taxpayers / Defendants and reduced their liability on the assessments to judgment. The various tax liens filed by the Government set out the date of filing and amount of assessments and are restated in the Government's latest filed "Amended Complaint to Reduce Federal Tax Assessments to Judgment and to Foreclose Federal Tax Liens on Real Property. PP. 6, 7, 8, 9. The Government's ability to foreclose its liens depends on whether the United States can avoid the previously transfers of real estate by the Shearers to the trusts. The Government concedes in its Amended Complaint that the Shearer Defendants/taxpayers' transfers of real property to the trusts predated the filing of the Government's tax liens which are at issue in this case. Therefore, the Government cannot foreclose the IRS tax liens, whose priority is based on the "first in time, first in right / line rule" unless the Government can "avoid" the prior transfers of the real property into the trusts by the Shearers unless the Government can set aside these transfer. Without avoidance of the trust ownership, the tax liens that are invalid and the Government may not foreclose its tax liens it asserts against the real estate described in its Amended Complaint. See United States Amended Complaint, PP. 3, 4, and 5.

2.  Seeking "legal avenues of avoidance" while attempting to disguise them in "equitable clothing" the Government asserts it

can avoid the Shearer taxpayers' antecedent transfers to the trusts which took place prior to the filing of its liens against the individual Shearer Defendants, by raising: (1) the "sham doctrine including alter ego and nominee; (2) grantor trust doctrine including under 26 U.S.C. § 670, et seq of the Internal Revenue Code and alter ego / nominee; (3) fraudulent transfer theories to avoid trust validity.

3.   The Government also claims that it doubts that the trusts in question ever existed under California law.  The legality of a trust is determined by the organizational and operational tests which fall under the "sham transaction doctrine."  See Muhich v. Commissioner of Internal Revenue, 238 F.3d 860 (7th Cir., 2001) and cases cited therein determining "fact issue" of sham.

4.   The Government wants to strike the Defendants' Demand for Jury Trial in this case even though the Government waived any sovereign immunity by filing suit against the trust Defendants in its federal quiet title / lien foreclosure action in which taxpayers as well as the Trusts are entitled to a jury trial on all disputed common law and statutory causes of action, defenses, and fact issues supporting their position.

5.   First the cause of action fact issues which remain in this case will be set out for the Court's review and consideration based on the allegations of the United States' Amended Complaint  (with Supporting References to the pages and paragraphs of the United States' Amended Complaint.)

6. Next, the Trusts will specifically plead their defense to the Government's Motion to Strike the Trust's Jury Demand.

3

7.   Thereafter, the Defendant trusts will present legal argument refuting the Government's claim that its fraudulent transfer and sham transaction causes of action or claims, and other contentions, are somehow exempt from the Seventh Amendment and requirements and a jury trial imposed on a federal court and an Article III Judge by the United States Supreme Constitution and Supreme Court.

ANALYSIS OF THE GOVERNMENT PLEADINGS -- WHAT FACT ISSUES OR CAUSES OF ACTION ARE LEFT TO BE TRIED?

HOTLUM TRUST "IF IT EXISTS"  P. 2, ¶ 6

BERRYVALE TRUST "IF IT EXISTS"  P. 2, ¶ 7

THE REGENCY TRUST "IF IT EXISTS"  p. 2, ¶ 8

FACT ISSUES - CAUSE OF ACTION TO BE TRIED -- WHETHER THE TWO TRUSTS, HOTLUM AND BERRYVALE, WERE FORMED AND ORGANIZED ACCORDING TO CALIFORNIA LAW?  SHAM TRANSACTION DOCTRINE.

NOTICE OF FEDERAL LIEN AND ASSESSMENT --

8.   The United States lists various filing dates and amounts of assessments contained in the federal tax liens it filed.  see Government Complaint, P. 5, 6, 7.

LEGAL ISSUE -- WHETHER THE NOTICE(S) OF FEDERAL TAX LIEN FILED Whether the tax liens are enforceable are enforceable? against the Trusts?

SUPPORTING FACT ISSUES

9.   The Government's tax liens filed of record against Hotlum, Berryvale, and Regency Trusts?

(1)   Fact issue:

Whether any of the trusts, Hotlum, Berryvale, and Regency, were operated as alter egos or nominees of the taxpayers, L. Richard Shearer and Diane Shearer based on proof by a preponder-

ance of the evidence that the taxpayers commingled assets with any of the trusts or failed to observe formalities of California and other applicable trust law in dealing with any of the trusts from the date of their formation:

GOVERNMENT SECOND CLAIM FOR RELIEF:

10. The Government argues in the second claim for relief or the cause of action "to establish that the Hotlum, Berryvale, and Regency Trusts, are sham trusts. P. 8, ¶ 32-38.

Fact Issues -- Whether the taxpayers, L. Richard Shearer and Diane Shearer, formed Hotlum, Berryvale, and Regency Trusts, "with the intent to conceal their ownership of 717 Michelle Drive, 634 North Main Street, 701 Pine Street, and Michelle Drive? P 8, ¶ 33.

11. Whether Hotlum, Berryvale, and Regency Trusts had a legitimate business purpose or lacked economic substance? P. 8, ¶ 34.

12. Whether Hotlum, Berryvale, and Regency Trusts had "no independent trustees?"

13. Whether the taxpayers and their agents formed and operated Hotlum, Berryvale, and Regency Trusts in accordance with California law?

14. Did any of the trusts, Hotlum, Berryvale, or Regency Trusts, fit the factual definition of a "grantor trust" under the Internal Revenue Code? 26 U.S.C. §670 et seq. P. 8, ¶ 35.

15. Whether the trusts, Hotlum, Berryvale, or Regency Trusts, were used by the taxpayers in an attempt to deduct undeductible personal expenses? P. 8, ¶ 35.

16. Whether the taxpayers transferred property to the trust,

5

Hotlum, Berryvale, and Regency, were done at a time when the taxpayers knew that they owed or would owe federal income tax liabilities? P. 8, ¶ 36.

17. Whether the Shearer taxpayers controlled the activities on the business of the trusts, Hotlum, Berryvale, and Regency Trusts, "with respect to the subject property?" P. 8, ¶ 37.

18. Whether the Shearer taxpayers chose trustees "they could control and direct?" P. 8, ¶ 37.

THIRD CLAIM FOR RELIEF -- (GOVERNMENT):
COMPLAINT OF THE UNITED STATES

19. FRAUDULENT TRANSFER CLAIMS: The Government alleges that the Shearer taxpayers' conveyance of real property or rights to property to the various trusts were "fraudulent transfers" done without consideration and/or for impermissible purposes. Government Complaint, P. 9, LL or ¶ 40 ??

Fact Issues Under Fraudulent Transfer:

20. Whether the Shearer taxpayers' transfers of real properties to the various trusts, Hotlum, Berryvale, and Regency, successfully passed title of the properties to those trusts?

21. Whether the Shearer taxpayers remained in possession of the property transferred to any of the trusts, after conveyance, in derogation of any of the trusts' property ownership or rights? P. 9, ¶41.

22. Whether the Shearer taxpayers have enjoyed the benefits and undertaken the benefits and burdens of ownership of the property transferred to the trusts in derogation of the trusts ownership or rights? P. 9, ¶ 43.

23. Whether the Shearer taxpayers impermissibly controlled

the trustees of any of the trusts in derogation of the trusts' best interest? P. 9, ¶ 43.

24. Whether the Shearer taxpayers commingled their personal funds with the funds of any of the trusts?

25. Whether the Shearer taxpayers' transfers of property to the Hotlum, Berryvale, and Regency Trusts, tended to delay or defraud the United States of America of present and future taxes lawfully owed? P. 9, ¶ 44.

26. Whether the Shearer taxpayers conveyances to the trusts were made without the exchange of reasonably equivalent value and left the taxpayers with insufficient remaining assets to satisfy their tax liabilities? P. 9-10, ¶ 45-46.

<u>SPECIAL PLEADING IN AVOIDANCE TO UNITED STATES MOTION TO STRIKE DEFENDANTS' JURY DEMAND</u>

II.

1. Defendants specifically plead the affirmative defense of "adequate legal remedy" to the Government's Motion to Strike Jury Demand. The Government has a legal remedy provided by the fraudulent transfer statute and therefore is barred from proceeding on its fraudulent transfer claims in equity without a jury.

<u>LEGAL ARGUMENT AND AUTHORITY IN SUPPORT OF DEFENDANTS' RIGHT TO JURY TRIAL</u>

III.

1. THE SEVENTH AMENDMENT REQUIRES JURY TRIAL OF ALL FACT ISSUES PRESENTED TO A FEDERAL DISTRICT COURT IN COMMON LAW OR STATUTORY ACTION.

The government urges the Court to strike the Trusts jury demand claiming that there is no right to trial by jury in equitable actions.

Contrary to the Government's assertion there is there is no

exception to the Seventh Amendment right to trial by jury in the U.S. Constitution or the "inferior" mandates of the Internal Revenue Code or its Regulations promulgated by the Commissioner of Internal Revenue or Department of the Treasury. Just as with the dictates prohibiting forced self incrimination under the Fifth Amendment there is no exception to the Seventh Amendment under which IRS and the U.S. can escape jury trial of the fact issues raised by the Government's Amended Complaint. See United States v. Troescher, 99 F.3d 933 (9th Cir., 1996).

What is the basis of this expansive right to trial by jury which guarantees jury trial of the tax and collection fact issues in this case? The United States Supreme Court explored the foundation for that right in Granfinanciera, S. A., Et Al. v. Nordberg, Creditor Trustee, 492 U. S. 33 (1989).

> Indeed, in our view Schoenthal v. Irving Trust Co., 287 U.S. 92 (1932), removes all doubt that respondent's cause of action should be characterized as legal rather than as equitable. In Schoenthal, the trustee in bankruptcy sued in equity to recover alleged preferential payments, claiming that it had no adequate remedy at law. As in this case, the recipients of the payments apparently did not file claims against the bankruptcy estate. The Court held that the suit had to proceed at law instead, because the long-settled rule that suits in equity will not be sustained where a complete remedy exists at law, then codified at 28 U.S.C. §384, "serves to guard the right of trial by jury preserved by the Seventh Amendment and to that end it should be liberally construed." 287 U.S., at 94. The Court found that the trustee's suit - indistinguishable from respondent's suit in all relevant respects - could not go forward in equity because an adequate remedy was available at law. There, as here, "[t]he preferences sued for were money payments of ascertained and definite amounts," and "[t]he bill discloses no facts that call for an accounting or other equitable relief." Id., at 95. Respondent's fraudulent conveyance action plainly seeks relief traditionally provided by law courts or on the law side of courts having both legal and equitable dockets.[fn7] Unless Congress may and has permissibly withdrawn jurisdiction over that action by courts of

> law and assigned it exclusively to non-Article III tribunals sitting without juries, the Seventh Amendment guarantees petitioners a jury trial upon request.

See Granfinanciera at Pgs. 48-49, ibid.

The Court in Granfinanciera went on to clearly explain where and why jury trial is required under the Seventh Amendment:

> We adhere to that general teaching. As we said in Atlas Roofing: "`On the common law side of the federal courts, the aid of juries is not only deemed appropriate but is required by the Constitution itself.'" Id., at 450, n. 7, quoting Crowell v. Benson, 285 U.S. 22, 51 (1932). Congress may devise novel causes of action involving public rights free from the strictures of the Seventh Amendment if it assigns their adjudication to tribunals without statutory authority to employ juries as fact finders.[fn9] But it lacks the power to strip parties contesting matters of private right of their constitutional right to a trial by jury. As we recognized in Atlas Roofing, to hold otherwise would be to permit Congress to eviscerate the Seventh Amendment's guarantee by assigning to administrative agencies or courts of equity all causes of action not grounded in state law, whether they originate in a newly fashioned regulatory scheme or possess a long line of common-law forebears. 430 U.S., at 457-458. The Constitution nowhere grants Congress such puissant authority. "[L]egal claims are not magically converted into equitable issues by their presentation to a court of equity," Ross v. Bernhard, 396 U.S. 531, 538 (1970), nor can Congress conjure away the Seventh Amendment by mandating that traditional legal claims be brought there or taken to an administrative tribunal. Granfinanciera at Pgs. 51-52.

To the admonitions supporting the right to jury trial set out in Granfinanciera must be added the further liberal and expansive construction of that right in Stern v. Marshall, 131 S.Ct. 2594 (U.S. 6-23-2011) clarifying the reach of Granfinanciera as follows:

> Granfinanciera, S. A. v. Nordberg, 492 U. S. 33 (1989). In Granfinanciera we rejected a bankruptcy trustee's argument that a fraudulent conveyance action filed on behalf of a bankruptcy estate against a noncreditor in a bankruptcy proceeding fell within the "public rights" exception. We explained that, "[i]f a statutory right is not closely intertwined with a federal regulatory

program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court." Id., at 54-55. We reasoned that fraudulent conveyance suits were "quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." Id., at 56. As a consequence, we concluded that fraudulent conveyance actions were "more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions." Id., at 55.[fn7]

Here as pointed out in Stern's interpretation of jury Trial Rights under Granfinanciera there is no regulatory scheme involved in this case or any public exception to the right to trial by jury. Just a case to reduce tax assessments to judgment and attempt to declare private transactions between taxpayers and Trusts as "fraudulent transfers" in aid of affixing their liens to trust property.

The Government waived its sovereign immunity by bringing this claim against the trusts. See U.S. v. Forma, 42 F.3d 759, 765 (2nd Cir., 1994).

The Ninth Circuit authority cited by the Government predates Stern and does not comport with the liberal construction of the right to jury trial under the Seventh Amendment required by Stern and Granfinanciera. The Ninth Circuit reaches the result denying jury trial by casting the causes of action brought by the government as equitable.

With its citations to earlier Supreme Court Authority Granfinanciera teaches us, if anything, that merely casting as case as equitable, or addressing claims for relief to the equitable side of the federal trial court does not magically transform

cases from common law actions into equitable ones.

Further, the adequate remedy at law Congress provided the Government for its fraudulent transfer action was not addressed in those decisions. See 28 U.S.C. Sec. 3301 et. Seq.. (Federal Fraudulent Transfer Act).

While the Government may well have a cause of action in equity to sue for and establish a fraudulent conveyance or transfer which predates the Federal Fraudulent Transfer Act, it cannot manipulate that right in such a manner as to deny the trust defendants a jury trial where the Government has an adequate remedy at law "under a statutory scheme" provided by Congress. See Schoenthal v. Irving Trust Co., 287 U.S. 92 (1932).

Both the Internal Revenue Code which provides jury trial for resolution of fact issues necessary to the Government's sham transaction doctrine claims in this case and the Government's adequate remedy at law under the fraudulent transfer act require that this case be tried by jury.

2. THE GOVERNMENT'S CAUSE OF ACTION AND CLAIMS BASED ON THE SHAM TRANSACTION DOCTRINE, INCLUDING ALTER EGO AND NOMINEE CLAIMS, MUST BE TRIED BEFORE A JURY WHERE ONE IS DEMANDED.

Most tax cases brought on the basis of the sham transaction doctrine theory are litigated in the United States Tax Court.

In dealing with cases where the I.R.S. attempts to disregard entities as separate juristic persons based on the sham transaction doctrine the Tax Court follows one consistent legal mantra: "Whether an entity is a sham is a question of fact..." See Cochran v. Commissioner, 56 T.C.M. (CCH) 1433, 1989 TC Memo 102 (T.C., 1989) and Muhich v. Commissioner of Internal Revenue, 238 F.3d 860 (7th Cir., 2001).

The proper procedure for determining fact issues which must be decided in a "sham" can be found in R & T Developers, Inc. v. Commissioner, 32 TCM (CCH) 551, 552, 1973 TC Memo 128 (U.S.T.C., 1973):

> The question before us as to whether R & T or B & C made the sales is purely factual. James M. Hallowell Dec. 30, 847, 56 T.C. 600, 607 (1971). Its resolution, as we have recently stated in Mark Bixby Dec. 31,493, 58 T.C. 757, 775-776 (1972) requires us not only to find the surface facts but also to probe the reality of those facts. * * * Also the fact that related * * * parties are involved herein necessitates our close scrutiny. * * * On the other hand, while the petitioners bear the burden of proof herein, their burden cannot be made more onerous by virtue of the character of respondent's allegation. The phrase "sham transaction" is not magical. Citations omitted.

Here there is no assessment against the Trust Defendants which places the burden of proof on the Trusts rather than the Government. Unlike its case against the Shearer Defendants, the Government must shoulder the burden of proof in its claims against the Trusts.

The Government's sham transaction claims against the Trusts, including alter ego and nominee theories, present fact issues which must be tried to a jury. See Wells Fargo & Co. v. United States, 260 F.Supp.3d 1140 (D. Minn., 2017) and Higgins v. Smith, 308 U.S. 473, 475 60 S.Ct. 355, 84 L.Ed. 406 (1940).

The statutory scheme of the Internal Revenue Code requires trial by jury of fact issues necessary to determine the Government's "sham transaction doctrine" claims.

3. THE GOVERNMENT'S FRAUDULENT TRANSFER CLAIMS MUST BE TRIED TO A JURY WHERE ONE IS DEMANDED.

Granfinanciera, infra, provides that a purported transferee of an alleged fraudulent transfer is entitled to a jury trial if

a timely demand is made. The Fair Debt Collection Practices Act provides an adequate remedy at law for the Government in this case. See 28 U.S.C. Sec. 3001 et. Seq.. When such a statutory scheme of relief is available to the Government the Government is required to utilize it. The manner in which the Government determines to cast its pleadings on this Court's legal waters should not be determinative or preclusive of a Defendant's right to jury trial under the Seventh Amendment.

## CONCLUSION

Based on all of the above arguments and the record in this case including the parties pleadings the United States Motion to Strike Defendants' Demand For Jury Trial should be denied.

Respectfully submitted,

s/Joe Alfred Izen, Jr.

Joe Alfred Izen, Jr.
5222 Spruce Street
Bellaire, TX   77401
(713) 668-8815 TEL
(713) 668-9402 FAX
jizen@comcast.net


s/Jihad M. Smaili

Jihad M. Smaili, Esq.
SMAILI & ASSOCIATES, PC
Civic Center Plaza Towers
600 West Santa Ana Blvd., # 202
Santa Ana, California 92701
(714) 547-4700
(714) 547-4710 (f)
www.smaililaw.com

SHEARM2S.RSP/TK498